# EXHIBIT B

# MUTUAL
# NON-DISCLOSURE AGREEMENT

This Mutual Non-Disclosure Agreement (the "Agreement") is made and entered into this 23rd day of September, 2017, between Ascent AeroSystems Inc ("Ascent"), with offices located 235 Harrison Street, Syracuse NY, 13202 and Overwatch Optics LLC with offices located at 1301 Gleneagles Lane, Davenport, FL 33896.

**WHEREAS**, each party to this Agreement possesses confidential, proprietary and/or trade secret information including, without limitation, information in tangible or intangible form relating to or including: business, product, marketing, licensing or sales activities, policies, practices, outlooks, studies, reports, analyses, strategies or forecasts; finances, revenue, pricing, costs or profits; released or unreleased products including, but not limited to, software, hardware, development, research, designs, specifications, performance characteristics, code, formulas, algorithms, data, techniques, processes, methods, inventions, patent applications, and testing strategies; industry, customer or consumer information; personnel, customer or supplier information; and third party confidential information (the "INFORMATION"); and

**WHEREAS**, each party in possession of INFORMATION (the "Disclosing Party") desires to disclose some of its INFORMATION to the other party (the "Receiving Party") subject to the terms and conditions of this Agreement;

**NOW, THEREFORE**, in consideration of the promises made herein, the receipt of certain INFORMATION and good and other valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

**1. Permitted Use.** The Receiving Party shall handle, use, treat and utilize such INFORMATION as follows: (a) hold all INFORMATION received from the Disclosing Party in strict confidence; (b) use such INFORMATION only for the purpose of (i) evaluating the possibility of forming a joint business relationship, employer-employee relationship, vendor-vendee relationship, independent contractor relationship, or other commercial arrangement between the parties concerning such INFORMATION, and (ii) if and when such relationship is formed by a written agreement, furthering the purpose and intent expressly stated in such written agreement; (c) reproduce such INFORMATION only to the extent necessary for such purpose; (d) restrict disclosure of such INFORMATION to only those of its domestic employees that have a legitimate need to know or access the INFORMATION (and advise such employees of the obligations assumed herein); and (e) not disclose such INFORMATION to any third party, including, but not limited to, any affiliate, vendor, customer, manufacturer, overseas employee or independent contractor, without prior written approval of the Disclosing Party. Any such approved third party must sign a separate copy of this Agreement and agree to be bound by all of its terms before the Receiving Party may disclose any INFORMATION to the approved third party.

In addition, with respect to any equipment, component, software, or other items delivered to the Receiving Party by the Disclosing Party, the Receiving Party shall not reverse engineer, disassemble, decompile, or otherwise analyze the physical construction of, any such items.

The restrictions on the Receiving Party's use and disclosure of INFORMATION as set forth above shall not apply to any INFORMATION which the Receiving Party can demonstrate:

i) is wholly and independently developed by the Receiving Party without the use of INFORMATION of the Disclosing Party; or

ii) is or has become generally known to the public without breach of this Agreement by the Receiving Party; or

iii) at the time of disclosure to the Receiving Party, was known to such Receiving Party free of restriction and evidenced by documentation in the Receiving Party's possession; or

iv) is approved for release by written authorization of the Disclosing Party, but only to the extent of and subject to such conditions as may be imposed in such written authorization; or

v) is disclosed in response to a valid order of a court or other governmental body in the United States or any political subdivision thereof, but only to the extent of and for the purposes of such order; provided, however, that if the Receiving Party receives an order or request to disclose any INFORMATION by a court of competent jurisdiction or a governmental body, then the Receiving Party agrees:

   a) if not prohibited by the request or order, immediately to inform the Disclosing Party in writing of the existence, terms, and circumstances surrounding the request or order;

   b) to consult with the Disclosing Party on what steps should be taken to avoid or restrict the disclosure of INFORMATION;

   c) to give the Disclosing Party the chance to defend, limit or protect against the disclosure; and

   d) if disclosure of INFORMATION is lawfully required, to supply only that portion of the INFORMATION which is legally necessary and try to obtain confidential treatment for any INFORMATION required to be disclosed.

**2. Designation.** INFORMATION shall be subject to the restrictions of Section 1 if it is in writing or other tangible form and clearly marked as proprietary or confidential when disclosed to the Receiving Party or, if not disclosed in tangible form, if it is clearly identified as confidential or proprietary at the time of disclosure. The parties agree to use reasonable efforts to summarize the content of oral disclosures which are proprietary or confidential but failure to provide such summary shall not affect the nature of the INFORMATION disclosed or detract from the protection afforded under this Agreement if such INFORMATION was identified as confidential or proprietary when orally disclosed.

**3. No License or Representations.** No license to a party of any trademark, patent, copyright, mask work protection right or any other intellectual property right is either granted or implied by this Agreement or any disclosure hereunder, including, but not limited to, any license to make, use, import or sell any product embodying any INFORMATION. No representation, warranty or assurance is made by either party with respect to the non-infringement of trademarks, patents, copyrights, mask protection rights or any other intellectual property rights or other rights of third persons.

**4. No Obligation.** Neither this Agreement nor the disclosure or receipt of INFORMATION shall be construed as creating any obligation of a party to furnish INFORMATION to the other party or to enter into any agreement or relationship with the other party with respect to mutual business.

**5. Return of Information.** All INFORMATION shall remain the sole property of the Disclosing Party which originally disclosed such INFORMATION. Except as may be otherwise required by applicable law, regulation, legal or judicial process, the Receiving Party shall make all reasonable efforts to promptly destroy or return all materials containing any such INFORMATION (including all copies made by the Receiving Party), upon request following termination or expiration of this Agreement or the Receiving Party's determination that it no longer has a need for such INFORMATION. Upon request of the Disclosing Party, the Receiving Party shall certify in writing that all such materials have been returned to the Disclosing Party or destroyed.

**6. Export Compliance Assurance.** The Receiving Party acknowledges that all products, software, and technology (herein referred to as "Products") obtained from the Disclosing Party are subject to the United States (U.S.) government export control and economic sanctions laws. The Receiving Party agrees that neither it nor its subsidiaries or affiliates will directly or indirectly export, re-export, transfer, or release, (herein referred to as "export"), any such Products or any direct product thereof to any destination, person, entity, or end-use prohibited or restricted under such laws without prior U.S. government authorization as applicable, either in writing or as permitted by applicable regulation.

**7. Term and Termination.** This Agreement shall become effective on the date first set forth above and shall terminate thirty-six (36) months from the date first set forth above.

**8. Notice.** Any notice or other communication made or given by either party in connection with this Agreement shall be sent via facsimile (with confirmation) or by registered or certified mail, postage prepaid, return receipt requested, or by courier service addressed to the other party at its address set forth below:

**9. Survivability.** Each party agrees that all of its obligations undertaken herein as a Receiving Party shall survive and continue after any termination or expiration of this Agreement.

**10. Injunctive Relief.** The parties agree that any unauthorized disclosure or use of any INFORMATION in violation of this Agreement will cause the Disclosing Party irreparable injury for which it would have no adequate remedy at law. Accordingly, the Disclosing Party shall be entitled, without the necessity of posting of bond or other security, to immediate injunctive relief prohibiting any violation of this Agreement, in addition to any other rights and remedies available to such Disclosing Party.

**11. Attorneys' Fees.** If a Disclosing Party files any legal action against a Receiving Party for violation of any provision of this Agreement and either (a) obtains a judgment against the Receiving Party, or (b) settles the dispute on terms that are more favorable to the Disclosing Party than the Receiving Party, then the Disclosing Party will be entitled to recover from the Receiving Party its reasonable costs and attorney fees in bringing legal action.

**12. Governing Law and Jurisdiction.** This Agreement shall be governed in all respects solely and exclusively by the laws of the State of New York, U.S.A. without regard to conflict of laws principles. Each party consents to the jurisdiction of any State or Federal court located within or with jurisdiction over Sandy Hook, Connecticut and waives any objections to venue in any action instituted in these courts.

Ascent AeroSystems Inc                 Overwatch Optics LLC
Attn: Mr. Peter Fuchs                  Attn: Jeff Hill
Address: 235 Harrison Street           Address: 1301 Gleneagles Lane
Syracuse, NY 13202                     Davenport, FL 33896

**13. Miscellaneous.** This Agreement constitutes the entire understanding among the parties hereto as to the INFORMATION and supersedes all prior discussions between them relating thereto. No amendment or modification of this Agreement shall be valid or binding on the parties unless made in writing and signed on behalf of each of the parties by its authorized officer or representative. No party may assign or transfer, in whole or in part, any of its rights, obligations or duties under this Agreement. The failure or delay of any party to enforce at any time any provision of this Agreement shall not constitute a waiver of such party's right thereafter to enforce each and every provision of this Agreement. In the event that any of the terms, conditions or provisions of this Agreement are held to be illegal, unenforceable or invalid by any court of competent jurisdiction, the remaining terms, conditions or provisions hereof shall remain in full force and effect.

**14. Counterparts, Electronic and Facsimile Delivery.** This Agreement may be executed in two or more identical counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute the Agreement when a duly authorized representative of each party has signed a counterpart. The parties intend to sign and deliver this Agreement by electronic or facsimile transmission. Each party agrees that the delivery of the Agreement by electronic or facsimile transmission shall have the same force and effect as delivery of original signatures and that each party may use such electronic or facsimile signatures as evidence of the execution and delivery of the Agreement by all parties to the same extent that an original signature could be used.

**IN WITNESS WHEREOF,** this Agreement shall become effective on the date set forth above.

Ascent AeroSystems Inc.                Overwatch Optics LLC

By: _____ Date: 2017.09.27     By: _____
                      14:04:40 -04'00'
Print Name:  Peter Fuchs               Print Name:  Jeffrey Hill

Title: Co-founder                      Title:  CEO

Date:  27 September 2017               Date:  27 September 2017

[Signature Page to Mutual Non-Disclosure Agreement]