# EXHIBIT K



February 4, 2019

**Mark Ledwell**
Direct +1 416 862 4652
Mark.Ledwell@gowlingwlg.com

**WITHOUT PREJUDICE**

**BY E-MAIL**

Mark Malaspina
Carmody Torrance Sandak & Hennessey LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110

Dear Mr. Malaspina:

**Re:  Letter dated January 29, 2019 regarding Ascent AeroSystems Inc.**

We are in receipt of your letter dated January 29, 2019 (your "**Letter**") regarding the request of Overwatch Defense LLC ("**Overwatch**" or our "**Client**") to return certain materials to Ascent AeroSystems Inc. ("**Ascent**").

**Ascent Aerosystems' Intellectual Property**

Your Letter refers to our Client's continued possession of "Ascent's intellectual property". For greater certainty, please provide us with the patent and/or patent application information in regards to the specific "intellectual property" you are referencing. Our client is of the position that the patents Ascent is currently pursuing involve information that was already available in the public domain from an open-source project the Merringer brothers started, which Ascent has now attempted to scrub from public sources.

Our Client would like to make Ascent aware that it is in possession of several files that had previously been publicly available, which will refute any assertion that Ascent is patenting something unique. Any existing patent Ascent may own is of no interest to our Client as these patents pertain to the return of a UAV to its user, and our Client's product involves one-way usage only. As such, we cannot accept the statement that our client is in possession of any "Ascent intellectual property" that it would actually use.

Please be advised that our client has removed the image you reference from its website.

**Return of Materials**

As noted in our letter dated January 17, 2019, our client contests the requirement to return materials provided under the Teaming Agreement. Although your Letter, again, points to the Non-Disclosure Agreement as the source for the requirement to return materials, we take the position that the materials were provided under the Teaming Agreement (as per the ship dates) for a different purpose, which provides for no such return.

**GOWLING WLG (CANADA) LLP**
1 First Canadian Place, 100 King Street West
Suite 1600, Toronto, Ontario, M5X 1G5  Canada

**T** +1 (416) 862 7525
**gowlingwlg.com**

Gowling WLG (Canada) LLP is a member of Gowling WLG, an international law firm which
consists of independent and autonomous entities providing services around the world.
Our structure is explained in more detail at www.gowlingwlg.com/legal

TOR_LAW\ 9794126\3



However, in the spirit of good faith, our Client is willing to return to Ascent the following materials:

- Sprite 1 with controller, gimbal and camera;
- Sprite 2 (unflyable unit which was destroyed while testing); wreckage is located at Cyprus Army Range and our Client will endeavor to recover;
- Sprite 2 flyable system with camera;
- Camera and Gimbal; and
- Flight wreckage of Sprite 2 (our Client advises this must be recovered from a government facility).

Our Client wishes to advise Ascent that these "mockups" were exclusively created for the purpose of attaching explosive devices (which is our Client's intellectual property); as such, Ascent should have no use for these mockups unless it intends to further breach the Teaming Agreement.

Our Client also advises that the propulsion component of one of the mockups has already been returned to Ascent during a conference in Atlanta.

## Operation in Good Faith

Your Letter states that your client was not aware of a single customer of Overwatch. Our Client asserts: (i) there was never any requirement to disclose its customers to Ascent; (ii) the reason such disclosure was not made was in order to avoid Ascent circumventing Overwatch and operating in bad faith, as it now has (e.g., Excalibur Army/CGS in the Czech Republic); and (iii) Overwatch keeps its customer information confidential for the purposes of national security in the case of sovereign nations. Our Client advises that Ascent had agreed to provide a "white label" product; that is, to build the product and allow Overwatch to sell it under the Overwatch name.

In addition, the units Overwatch requested from Ascent were to fulfill an order from a client Overwatch already had a relationship with before Ascent was involved. Ascent delayed and then simply denied this request, forcing our Client to make alternative arrangements for drone manufacturers. This contract would have mated warheads with the UAVs, completing weaponization, and allowing the customer to fulfill their own orders.

## 100% Disabled Veteran

Our Client would like to remind Ascent that Overwatch is a 100% owned and operated Service Disabled Veteran business. Overwatch had been in this industry long before Ascent was involved and is disappointed that just as Overwatch began to experience success, Ascent, without warning, chose to manipulate and sabotage its accomplishments. Our Client's existing relationships have been negatively impacted and much international work has now been rendered useless, resulting in significant financial loss to our Client. Ascent's approach to this 100% Service Disabled Veteran business is unfortunate and, frankly, regrettable.

TOR_LAW\ 9794126\3



Please provide your client's preferred mailing address for the delivery of the materials noted above. Once our Client determines shipping costs, it will forward an invoice to Ascent for pre-payment regarding same.

Sincerely,

Gowling WLG (Canada) LLP

Mark Ledwell

ML/jm

TOR_LAW\ 9794126\3