# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ASCENT AEROSYSTEMS INC., <br>             Plaintiff, <br><br> vs. <br><br> JEFFREY T. HILL <br> ANDREW G. MICHAEL <br> OVERWATCH AEROSPACE LLC <br> OVERWATCH AEROSPACE LTD <br> OVERWERX LTD, <br><br>             Defendants. | Civil Action No.: 3:24-cv-01075-OAW <br><br><br><br><br><br><br><br><br> August 26, 2024 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION TO DISMISS

Thomas J. Rechen, Esq. (ct 03385)
**McCarter & English, LLP**
City Place 1, 36th Floor
185 Asylum Street, 36th Floor
Hartford, CT 06103
Tel: (860) 275-6706
Fax: (860) 218-9680
trechen@mccarter.com

Ferdinand Romano, Esq. (*Pro Hac Vice*)
**Accel IP Law, PLLC**
505 Brevard Ave., Suite 104
Cocoa, FL 32922
Tel: (321) 223-6215
Fax: (321) 417-7126
fromano@acceliplaw.com

Stephen Milbrath, Esq. (*Pro Hac Vice*)
**Bitman O'Brien & Morat, PLLC**
610 Crescent Executive Ct., Suite 112
Lake Mary, Florida 32746
Tel: (407) 815.3110
smilbrath@bitman-law.com

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ...................................................................................... 3

        A.      The Hill Patents.............................................................................................. 3

        B.      Hill's First Contact with Ascent ..................................................................... 3

        C.      The Non-Disclosure Agreement and Commercial Teaming Agreement................ 5

        D.      Equipment Supplied to Hill and Overwatch Defense ............................................ 7

        E.      Voluntary Dismissal of the Unserved First Connecticut Lawsuit by Ascent ......... 8

        F.      Post-Dismissal Events..................................................................................... 10

III.    APPLICABLE LEGAL STANDARDS ........................................................................... 11

IV.     ARGUMENT................................................................................................................ 13

        A.      The Court Lacks Personal Jurisdiction over any of the Defendants..................... 13

                1.      The LLC Defendants are Not Subject to Personal Jurisdiction on
                        Count One .............................................................................................13

                        a.      The NDA does not create personal jurisdiction as to
                                Overwatch Defense ...........................................................................13

                        b.      Successor liability theories do not make allow for personal
                                jurisdiction over the Defendants .......................................................18

                        c.      Conn. Gen. Stat. § 33-929 does not apply ......................................22

                        d.      Conn. Gen. Stat. § 52-59b does not justify long-arm
                                jurisdiction .........................................................................................22

                2.      Long Arm Jurisdiction does not Extend to Hill or Michael on
                        Count Two ..............................................................................................24

                3.      No Defendant Committed a Tortious Act within the State Within
                        the Meaning of § 52-59b(a)(2) or a Tort Outside the State with

i

Injury to Persons Within the State ............................................................25

    4.    No Defendant Waived Venue or Consented to Jurisdiction Here .............29

B.    Venue Does Not Lie in Connecticut ...................................................................... 29

C.    Alternatively, Counts Two, Three and Four of Ascent's Complaint Must Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)...................................................... 30

    1.    Count Two for breach of contract must be dismissed...............................30

    2.    Count Three for misappropriation of trade secrets must be dismissed.................................................................................................32

    3.    Count Four for correction of inventorship must be dismissed...................33

V.    CONCLUSION................................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.G. Assocs. of Newington Britain v. Parafati*,
No. CVN0041808N, 2002 WL 1162890 (Conn. Super. Ct. Apr. 11, 2002) ..........................20

*Arar v. Ashcroft*,
585 F.3d 559 (2d Cir. 2009)...............................................................................................13

*Ascent Aerosystems Inc. v. Overwatch Defense LLC*,
No. 3:19-cv-00210-KAD (D. Conn. filed Feb. 12, 2019)........................................................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................12, 13

*Bloom v Bloom Family Limited Partnership*,
2020 WL 854027 (D. Conn. Jan. 17, 2020)............................................................................28

*Blue Gentian, LLC v. Tristar Products, Inc.*,
70 F.4th 1351 (Fed. Cir. 2023) .........................................................................................5, 34

*Brokamp v. James*,
66 F.4th 374 (2d Cir. 2023) ...............................................................................................12

*Buser v. Experian Information Solutions, Inc.*,
No. 8:23-cv-1881-TPB-UAM, 2023 WL 8828794 (M.D. Fla. Dec. 21, 2023).......................31

*Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*,
2 F. Supp. 3d 192 (D. Conn. 2014).....................................................................................19

*Chamlink Corp. v. Merritt Extruder Corp.*,
96 Conn. App. 183 (2006) ..............................................................................................19, 20

*Chirag v. Mi Marida Marguerite Schiffarhrts*,
933 F. Supp. 2d 349 (D. Conn. 2013)..................................................................................23

*Chirag v. MT Marida Marguerite Schiffahrts*,
604 Fed. Appx. 16 (2d Cir. 2015)........................................................................................11

*Chou v. Univ. Of Chicago*,
254 F.3d 1347 (Fed. Cir. 2001).........................................................................................34

*Compulife Software Inc v. Newman*,
959 F. 3d 1288 (11th Cir. 2020) ........................................................................................32

iii

*Connecticut Aircraft Corp. v. Smith*,
  574 F. Supp. 626 (D. Conn. 1983)........................................................................26, 27, 28

*Dania Jai-Alai Palace, Inc, v. Sykes*,
  450 So. 2d 1114 (Fla. 1984)..........................................................................................31

*Eastwood v. Molecular Defenses Corp.*,
  373 F. Supp. 3d 502 (S.D.N.Y 2019)...........................................................................34

*Ensign-Bickford Co. v. ICI Explosives USA Inc.*,
  817 F. Supp. 1018 (D. Conn. 1993)...............................................................................11

*Evergreen Nat. Indem. Co. v. Capstone Bldg. Corp.*,
  No. CIV.A. 3-07-CV-1189J, 2008 WL 349457 (D. Conn. Feb. 6, 2008) ...............................17

*Faber v. Metro. Life Ins. Co.*,
  648 F.3d 98 (2d Cir. 2011)..............................................................................................12

*Faiverly Transport Malmo AB v. Wabtec Corp.*,
  559 F. 3d 110 (2d Cir. 2009)..........................................................................................33

*Ferrar v Munro.*
  585 B.R. 269 (D. Conn. 2018) .......................................................................................27

*Godiksen v. Meadow View Farms, LLC*,
  2024 WL 807051 (Superior Ct. Conn Feb. 16, 2024) ...........................................................26

*Great N. Ins. Co. v. BMW of N. Am.*,
  LLC, No. 15-CV-00416 (VAB), 2018 WL 1472513 (D. Conn. Mar. 25, 2018).....................17

*Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*,
  638 F. Supp. 2d 278 (D. Conn. 2009)...............................................................................21

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005)............................................................................................12

*Indymac Mortgage Holdings, Inc. v. Reyad*,
  167 F. Supp. 2d 222 (D. Conn. 2001)...............................................................................12

*Jazini v. Nissan Motor Co.*,
  148 F.3d 181 (2d Cir. 1998).............................................................................................11

*John Boutari & Son, Wines and Spirits, S.A. v. Attiki*,
  22 F.3d 51 (2d Cir. 1994)............................................................................................17, 18

*Lawnranger, LLC v. Stabnick*,
  No. CV116019457S, 2015 WL 7709142 (Conn. Super. Ct. Oct. 29, 2015) ..........................19

*Legal A/S v. Best-Lock Const. Toys Inc.*,
    886 F. Supp. 2d 65 (D. Conn. 2012)........................................................................................25

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    673 F.3d 50 (2d Cir. 2012).......................................................................................................11

*MAK Mktg., Inc. v. Kalapos*,
    620 F. Supp. 2d 295 (D. Conn. 2009).......................................................................................17

*Matthew v. SBA, Inc.*,
    149 Conn. App. 513 (2014) .....................................................................................................22

*Mazloum v. Int'l Com. Corp.*,
    829 F. Supp. 2d 223 (S.D.N.Y. 2011).......................................................................................11

*Medina v. Unlimited Sys., LLC*,
    760 F. Supp. 2d 263 (D. Conn. 2010).......................................................................................19

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).......................................................................................................11

*Napes v. Keystone Bldg.& Dec. Corp.*,
    295 Conn. 214 (2010) ..............................................................................................................25

*New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*,
    121 F.3d 24 (2d Cir. 1997)........................................................................................................12

*O.F. Mossberg & Sone, Inc v. Timney Triggers, Inc.*,
    No. 3:12-cv-00198 (VAB), 2018 WL 4398249 (D. Conn. Sept. 14, 2008) ............................10

*Pauwels v Deloitte, LLC*,
    83 F.4th 171 (2d Cir. 2023) .....................................................................................................32

*Pearce v. State Farm Mutual Auto Ins. Co.*,
    No. 22-cv-14353-Middlebrooks/Maynard, 2023 WL 9060869 (M.D. Fla. July
    13, 2023) .................................................................................................................................31

*Roller Bearing Company of America, Inc. v. Multicut North America, Inc.*,
    No. 3:18-cv-1212 (SRU), 2023 WL 7277244 (D. Conn. Sept. 29, 2023) ..............................32

*S. Connecticut Gas Co. v. Waterview of Bridgeport Ass'n., Inc.*,
    No. CV054005335, 2006 WL 1681005 (Conn. Super. Ct. June 1, 2006) ...............................19

*Sparano v. JLO Automative, Inc.*,
    No. 3:19-cv-00681 (VAB), 2022 WL 266159 (D. Conn. Jan. 29, 2022) ................................10

*Success Systems, Inc. v. Excentus Corp.*,
    439 F. Supp. 3d 31 (D. Conn. 2020)......................................................................................2, 29

*Supreme Fuels Trading FZE v Sargeant*,
No. 23-80633-CIV-Altonaga/Maynard, 2023 WL 6121909 (S.D. Fla. Sept. 19, 2023) ....................................................................................................................30, 31

*In re Terrorist Attacks on September 11, 2001*,
714 F.3d 659 (2d Cir. 2013)...........................................................................................11

*United States v. City of New York*,
359 F.3d 83 (2d Cir. 2004)........................................................................................12, 14

*Universitas Education, LLC v. Benistar*,
No. 3:20-cv-00738 (JAM), 2021 WL 965794 (D. Conn. March 15, 2021)......................30

*Verture Inc. v. Meshki*,
429 F. Supp. 2d 479 (D. Conn 2006)..........................................................................23, 28

**Statutes**

18 U.S.C.§ 1832..................................................................................................................33

18 U.S.C. § 1839(6)(B).......................................................................................................33

28 U.S.C. § 1406(a) .........................................................................................................2, 12

35 U.S.C. § 256...................................................................................................................33

Conn. Gen. Stat. § 33-929...................................................................................................22

Conn. Gen. Stat. § 52-59b..............................................................................................22, 25

Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, *et seq.* ................1

Connecticut Uniform Trade Secrets Act, Conn Gen Stat. § 35-52, *et seq.*......................1

Defend Trade Secrets Act, 18 U.S.C. § 1836 ................................................................1, 33

Conn. Gen. Stat.s § 52-552e ..............................................................................................21

**Other Authorities**

C.J.S. Corporations ............................................................................................................20

Fed. R Civ. P. 12(b)(1)..........................................................................................................2

Fed. R. Civ. P. 12(b)(2)...........................................................................................2, 11, 34

Fed. R. Civ. P. 12(b)(3)........................................................................................................12

Fed. R. Civ. P. 12(b)(6).............................................................................................2, 12, 30, 35

Fed. R. Civ. P. 41 ........................................................................................................9, 10, 15

Fed. R. Evid. 408 ....................................................................................................................10

## I.    INTRODUCTION

Ascent AeroSystems, Inc. ("Ascent"), a Delaware company that was once a Connecticut LLC, but which has since become a subsidiary of a California company, and which does not even maintain its principal place of business in Connecticut, has sued five foreign defendants for breach of contract, misappropriation of trade secrets, correction of inventorship of two United States patents and for alleged violations of the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn Gen Stat. § 35-52, *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b, *et seq*. Ascent's claims are complex and ambiguous, but certain elemental facts are clear: none of the Defendants have offices in or do business in Connecticut and never have; none of the individual Defendants ever contracted with Ascent in Connecticut or even traveled here; and Ascent has no viable claim that it was injured in Connecticut or that the individual Defendants and the limited liability companies named as defendants in this case are amenable to suit in Connecticut.

To overcome the foregoing personal jurisdiction deficiencies, Ascent attempts to "bootstrap" jurisdiction by relying on the law of successor liability. But it is readily apparent from the facts set forth in the accompanying Declaration of Jeffrey T. Hill that Overwerx Ltd., a UK company, is not a mere continuation of the now dissolved Florida LLC, Overwatch Defense, and the present LLC Defendants are not the results of *de facto* merger or consolidation, but of ordinary business transactions to commercialize an invention. Additionally, Ascent fails to allege the misappropriation of any of its alleged trade secrets in Connecticut or any basis for predicating personal jurisdiction over Defendants in a Connecticut court. This is likewise true for the claim by Ascent to ownership of the Hill patents, which were assets of the Florida company, Overwatch Defense LLC, and long ago transferred to the UK company, Overwerx Ltd. Connecticut is not the proper forum for adjudging the merits of Ascent's much-belated ownership theory against a UK

1

company. Its claim to such ownership, moreover, is based upon the alleged prior invention or co-invention of Ascent's founders, who are not even parties to this case, concerning an invention Hill disclosed to them as early as September 27, 2017, and not in Connecticut.

Setting aside whether Ascent owns any trade secrets and has adequately identified them and the manner of their misappropriation, there is no basis for exercising personal jurisdiction over any of the Defendants in Connecticut. The Complaint should thus be dismissed under Fed. R. Civ. P. 12(b)(2). A prima facie showing that such jurisdiction exists requires that the plaintiff aver sufficient facts, which if believed by the fact finder would "suffice to establish jurisdiction over the defendant." *Success Systems, Inc. v. Excentus Corp.*, 439 F. Supp. 3d 31, 49 (D. Conn. 2020). This Court may not exercise such jurisdiction unless a defendant's intrastate activities meet the requirements of both the Connecticut long-arm statute and the Due Process Clause of the Constitution." *Id.*

The declarations submitted herewith also show that venue does not properly lie in the District of Connecticut. In evaluating these declarations and in considering them in light of the allegations of the Complaint, the Court may, where necessary, "examine facts outside the Complaint to determine whether venue is proper." *Id.* at 50 (quoting *Quinn v. Fishkin,* 117 F. Supp. 3d 134, 138 (D. Conn. 2015)). If the Court is satisfied that venue is not proper, it must either dismiss the case or transfer it to the district or division where the action could properly have been brought. *Id.*; 28 U.S.C. § 1406(a).

Finally, the claim for "inventorship correction" (Count Four) premised upon fraud by Hill, now a citizen of Virginia, before Overwerx even existed, not only has no connection to Connecticut but is subject to dismissal for lack of subject matter jurisdiction under Fed. R Civ. P. 12(b)(1) and (2). Further, Counts Two, Three and Four fail to state a claim Fed. R. Civ. P. 12(b)(6).

2

## II.   FACTUAL BACKGROUND[1]

### A.   The Hill Patents

The only patents material to Ascent's Complaint are the two Hill Patents: U.S. Patent No. 11,067,374 (filed October 5, 2018) ("Remotely Controllable Aeronautical Ordinance Loitering") ("Hill '374") and U.S. Patent No. 11,940,251 (filed July 19, 2021) (Hill '251). Michael Decl. Exs. 26-27. Defendants view these patents as particularly important in this case because they render Plaintiff's claim of misappropriation as completely misguided. Michael Decl. ¶¶ 66-77.

Ascent claims to be an '*innovator in the development* of" a coaxial unmanned aerial vehicle ("UAV") or drone. Compl. ¶ 5, ECF No. 1 (emphasis added). Ascent's commercially marketed drones are touted as cylindrically shaped, modular designs, generally having features typical of many drone designs including being rugged, damage resistant and launchable from confined areas, *id.* ¶ 30, which became well known long before Ascent filed for its very narrow patent. *See, e.g.*, Michael Ex. 9. Yet, Plaintiff apparently wants the Court to believe it is nonetheless asserting unidentified but misappropriated trade secrets in some manner associated with one of its PHOLOS loitering munition drone designs.

### B.   Hill's First Contact with Ascent

Hill conceptualized his invention(s) and was working on a PHOLOS precision weaponry delivery design long before his first communication with Ascent, as clearly shown by the chronology set out in his declaration. *See* Hill Decl. ¶¶ 29-36, Exs. 1-13. However, Hill needed to find manufacturing capability for a drone with generic features similar to those being sold by Ascent—he did not require proprietary drone technology. It was Hill's intent to integrate

---

[1] Defendants have filed the following (i) Declaration of Jeffrey T. Hill ("Hill Decl."), founder of Overwatch Defense, now dissolved, and inventor of the "Hill" patents, and (ii) Declaration of Andrew Michael ("Michael Decl."), founder of the UK companies, Overwerx Ltd and Overwatch Aerospace Ltd, and manager of Overwatch Aerospace, LLC, a Florida, LLC.  Exhibits to the Hill and Michael declarations are cited as "Hill Decl. Ex. [#]" and "Michael Decl. Ex. [#]," respectively.

3

differentiating component designs to meet battlefield related specifications and to follow the teachings of his '374 and '251 Patents. Prior to the filing of this lawsuit no ownership claim or proprietary features suitable for a PHOLOS had been disclosed by Ascent to Hill or Michael. But the converse is not true: after Overwatch Defense entered into a non-disclosure agreement ("NDA") and a Commercial Teaming Agreement ("CTA"), Hill did disclose the proprietary information of his first provisional patent application to Ascent. Notwithstanding that disclosure, Ascent never claimed that any of Hill's proprietary disclosures were first invented or co-invented by Ascent. Indeed it is a surprise to Defendants that the patents later issued to Hill are now said by Ascent to have been invented or co-invented first by Ascent's "founders."[2]

To initiate an initial conversation, Hill, then a resident of Davenport, Florida, sent Ascent an email to stimulate discussion about potential co-development interests. He told Ascent that he perceived that an existing Ascent drone was consistent with the generic features he was looking for in the platform. Hill Decl. ¶ 66.

Hill's representation as to "hav[ing] patented it" is characterized as false in Ascent's Complaint. Compl. ¶ 34. Yet, as Hill attests, he conceived the PHOLOS design years before encountering Ascent, none of whose founders had an interest in or an understanding of loitering munitions at the time they first met in September 2017. Hill Decl. ¶ 9. As confirmed through the public record of the United States Patent Office, Hill now states he is the sole listed inventor of the Hill Patents. His first provisional patent application was filed on October 5, 2017, just eight days after Hill signed the NDA (ECF No. 8-6), but before any disclosure of the first provisional application to Ascent. Hill Decl. ¶ 25. There was nothing deceptive in Hill's representation that his invention was "patented." Hill is not a patent attorney.

---

[2] The actual inventors are unnamed in Plaintiff's pleadings.

What is clear is that Hill's first provisional application is directed to a loitering drone, *i.e.*, with ordnance, a design which logically could not have been originally conceived by any of plaintiff's founders, *i.e.*, to whom Hill disclosed his invention no earlier than September 27, 2017, the date the NDA was signed by Overwatch Optics, LLC, according to Ascent's Complaint. Compl. ¶¶ 35-38. Notwithstanding the entirely conclusory allegations in Ascent's Complaint about prior invention, Compl. ¶¶ 81-84, Ascent must provide evidence to refute Hill's claim as the sole and first inventor of the PHOLOS concept as set forth in his first provisional patent application. Hill Decl. ¶ 27. Ascent has not alleged facts or even a plausible chronology to refute Hill's inventorship claims or to allege that it is the inventor of even one patent claim in the Hill Patents; s*ee, e.g.*, *Blue Gentian, LLC v. Tristar Products, Inc.*, 70 F.4th 1351, 1357-1359 (Fed. Cir. 2023); and so, any claim by Ascent that it has jurisdiction in Connecticut over the person of Mr. Hill, or the other Defendants, based upon the theory that Ascent somehow provided trade secrets or other "confidential" content which contributed to the conception or reduction to practice of at least one patent claim must be rejected as un-pleaded and undemonstrated in the pleadings. Hill's unrefuted evidence of conception of his invention before any disclosure of his invention to Ascent makes it impossible for Ascent to make a *prima facie* case of joint inventorship, patent ownership, or trade secret misappropriation of any subject matter allegedly disclosed to Hill. Michael Decl. ¶¶ 65-77.

C.      The Non-Disclosure Agreement and Commercial Teaming Agreement

Ascent's Complaint refers to the NDA executed by Hill, then a Florida resident, for Overwatch Optics, LLC. The NDA obligates each receiving party to hold confidential, proprietary or trade secret information it received "in strict confidence" and to use it "only for the purpose of (i) evaluating the possibility of *forming a joint business relationship* . . . and (ii) if and when such relationship is formed by a written agreement, furthering the *purpose and intent* expressly stated in such agreement" and not disclosing it to others. NDA § 2, ECF No. 8-6. The NDA (and

subsequently the CTA) provided protection to Hill and his companies, respectively, Overwatch Optics and Overwatch Defense, for what he disclosed to Ascent just as it provided protection to Ascent. The NDA's restrictions on the Receiving Party in either case shall not apply to any information "independently developed by the Receiving Party . . . ." NDA § 1(i), ECF No. 8-6.[3]

The disclosure of inventive concepts that Hill provided to Ascent came from Hill by emails and other means, including oral communications, from his offices in Florida and were sent to Ascent's CEO Fuchs and the Meringer brothers in Syracuse, New York.  Hill Decl. ¶ 15. No such communications appear to have been forwarded to Connecticut. Michael Decl. ¶¶ 56-61.

Ascent asserts that the CTA was for the purpose of "making and selling a "PHOLOS" weaponized drone, *id.* ¶ 37, but contrary to its assertion, this was not and could not be "***Ascent's*** coaxial drone adapted for a military purpose" because Ascent did not at that time have a design which met the PHOLOS Specifications created by Hill. Hill Decl. ¶¶ 17, 39f. Although the CTA did contemplate investigating such a venture, as noted in Exhibit 1 to the CTA at ECF No. 8-5, an enforceable development contract for commercialization of the PHOLOS whereby a loitering munition suitable for military applications would be developed never materialized before Ascent abruptly halted Overwatch Defense's good faith efforts to negotiate the development agreement by unilaterally terminating the CTA and demanding the return of all confidential information and

---

[3] Accordingly, if Ascent means to assert in this case that there are matters it "independently developed" *before* it received Hill's disclosure of proprietary, confidential, and trade secret information, the Complaint does not plausibly allege these facts. And if Plaintiff's tort theory is based upon prior inventions, the Complaint must say so and allege facts establishing jurisdiction in Connecticut based on that alleged tort. Logically, if the founders of Ascent invented the subject matter of Hill's '374 and '251 Patents, they would have had no need of entering the CTA because they would have possessed the enabling knowledge to practice the invention (a required element of patentability) and no need to evidence "co-development" of an embodiment of the PHOLOS. Perhaps most important, the conclusory claims of Ascent about prior invention or disclosure are factually refuted by the Hill and Michael Declarations. Ascent did not have anything more than drone designs which could not be modified to meet the PHOLOS specifications or the Design Specifications called for in the CTA Statement of Work. CTA at ECF No. 8-5; *see also* Michael Decl.¶¶ 65-77. And Ascent never disclosed to Hill that his inventive concepts had supposedly been "independently developed" already by them, *i.e.*, conceived by Ascent prior to September 27, 2017.

6

samples of UAVs it had freely provided to Overwatch Defense without proprietary information markings. Michael Decl. ¶¶ 101-111.

Although the NDA was signed by Overwatch Optics (not Overwatch Defense) on or about September 27, 2017, the initiative of the CTA to design a PHOLOS commenced after the CTA was signed and ended on or before November 26, 2018, when Ascent formally terminated the CTA. Compl. ¶ 42. During this time, neither Hill nor Michael ever traveled to Connecticut, entered any contract in Connecticut or transacted any business in Connecticut personally or through an agent. Michael ¶¶ 10-11, 58. Hill did all of his work of reviewing and sending emails with Ascent personnel from Florida, while communicating via telephone or video conference with Fuchs and other Ascent personnel in Syracuse, New York. Hill Decl. ¶ 15. Michael, a UK citizen, also communicated from the UK, where he resides, with Fuchs and Ascent personnel and remotely reviewed such things as a fundraising memo with Ascent's Syracuse, New York office. Michael Decl. at Ex. 17, 32.

No tort was or could have been committed in Connecticut or elsewhere by Hill or Michael or Hill's two now-dissolved companies because the Hill patents are and were "independently conceived and documented" prior to the first time Hill communicated with Ascent. Moreover, nothing identified as confidential from Ascent was ever used or needed by Hill, or by the subsequently created UK entities. Nor was anything used or needed by Michael, a UK citizen, who never set foot in Connecticut to develop any embodiment of a PHOLOS. No permission was needed by Hill or the assignee of his patents, Overwerx Ltd or by Overwatch Aerospace Ltd, both UK entities, to commercialize any independently design an original loitering munition. Michael Decl. ¶¶ 58-59, 70-80, 138-141.

    D.    Equipment Supplied to Hill and Overwatch Defense

The Complaint alleges that Ascent provided "Hill, Michael and Overwatch Defense" with items of equipment including: "(a) a Sprite I UAV with a First-Person View system, (b) Pholos I UAV Mockups, (c) Pholos 2 UAV Mockups, (d) Sprite 2 UAVs with ground controller and accessories, and (e) Sprite 2 UAV (vehicle only)." Compl. ¶ 40. The Hill declaration addresses each item of this physical equipment. Hill Decl. ¶ 39. The product referred to as Sprite 1 UAV was an Ascent Sprite UAV sold on the open market and made generally available to the public by Ascent as open-source technology. The Sprite 2 was a variant of the Sprite and was also developed for sale on the open market and was displayed and promoted on Ascent's website. *Id*. The receipt and delivery of these items took place in Florida or in New York or in London, but not in Connecticut. Michael Decl. ¶ 61.

E.      Voluntary Dismissal of the Unserved First Connecticut Lawsuit by Ascent

Hill received demands from Ascent for the return of the items mentioned above. Before Hill could fully address Ascent's requests, Ascent filed its first lawsuit against Overwatch Defense - not Hill and not Michael - alleging breach of the NDA and the CTA. *See* ECF No. 8-16 (Complaint, *Ascent Aerosystems Inc. v. Overwatch Defense LLC*, No. 3:19-cv-00210-KAD (D. Conn. filed Feb. 12, 2019). Although docketed with this Court, this first lawsuit was never served on Overwatch Defense. Michael Decl. ¶¶ 108-112.

Overwatch Defense called upon a Canadian law firm, Gowling WLG ("Gowling"), for assistance in getting Ascent to drop the Connecticut suit. After negotiation, Hill, as manager for Overwatch Defense, signed an alleged "settlement agreement," which was not a settlement agreement in the true sense, but merely a confirmation of Hill's commitment to abide by the terms of the CTA. Gowling Letter February 15, 2019, ECF No. 8-17. Hill agreed to return or destroy a

8

Sprite UAV, two mock-ups for the "PHOLOS", and a Sprite UAV[4] with controller, along with a "Pelican case." *Id.* at Schedule A.

In this document, Hill, as CEO of Overwatch Defense, "verified" that he had already or would destroy "all printed and electronic Information" he had received from Ascent under the NDA. *Id.* at Schedule B. Hill also reiterated his commitment that "Overwatch [Defense] will not use any information provided by Ascent or derived from Ascent's disclosures in any manner in the future." *Id.* at Schedule C. The statement was clearly limited to confidential information and trade secret information. Hill further agreed on behalf of Overwatch Defense that "Overwatch will not infringe U.S. Patent no. 10,093,417 B2 at any time during the patent term." *Id.* at Schedule D.

On March 22, 2019, a Gowling attorney wrote the lawyer for Ascent a letter declaring that Overwatch Defense was in full compliance with the terms of the NDA and had satisfied every one of "your client's additional requests" and he demanded that Ascent "withdraw federal complaint No. 3:19-cv-00210 (KAD) immediately and, in any event, no later than Monday, March 25, 2019 by 5:00 pm." Gowling Letter March 22, 2019, ECF No. 8-18. Thereafter the Gowling lawyer sent another letter advising Ascent that its ongoing threats of legal action "violates Section N of the Teaming Agreement" and it gave Ascent a deadline for withdrawing the Connecticut suit or else it would turn the matter over to U.S. lawyers for a lawsuit against Ascent for damages for breach of the CTA.  Gowling Letter April 11, 2019, ECF No. 8-19.

Ascent complied. It filed a notice of dismissal under Rule 41(a)(1)(A)(i) on April 24, 2019. Hill received no subsequent communications from Ascent or its counsel advising of any failings on his part, or that of Overwatch Defense, in the promises made by Overwatch Defense leading to the dismissal of the Connecticut lawsuit. Seeing no such communications, Hill reasonably believed

---

[4] The Sprite was a publicly sold UAV. The device can be purchased second-hand online.

9

that the dispute between the parties was over, and he deleted information whether or not truly confidential.

Neither the Gowling letter or the Rule 41 dismissal of the Complaint is a true settlement. A dismissal works no "judicially sanctioned change in the legal relationship of the parties" *O.F. Mossberg & Sone, Inc v. Timney Triggers, Inc.*, No. 3:12-cv-00198 (VAB), 2018 WL 4398249, at *5 (D. Conn. Sept. 14, 2008). Moreover, Gowling's correspondence expressly states it was written "WITHOUT PREJUDICE" and so the document is likely not even properly considered in this case. *Sparano v. JLO Automative, Inc.*, No. 3:19-cv-00681 (VAB), 2022 WL 266159, at * 4 (D. Conn. Jan. 29, 2022) (Rule 408 prohibits admission of settlement offers "either to prove or disprove the validity or amount of a disputed claim or to impeach").  The purpose of the letters and the dismissal was to effect the voluntary dismissal of the unserved complaint without Overwatch Defense having to appear in Connecticut and defend in return for an affirmance of Overwatch Defense's already existing obligations

F.      Post-Dismissal Events

The Complaint falsely implies that "only months" passed between the so-called "Settlement Agreement" and Hill's involvement in the UK companies, Overwerx Ltd and Overwatch Aerospace, Ltd, including when they were formed. ECF No. 1, ¶ 48. In truth, nearly a year was consumed between Hill's signature on the so-called "Settlement Agreement," in February 2019, *see* Gowling Letter February 15, 2019, ECF No. 8-17, and his execution of the papers whereby Overwatch Defense transferred the Hill patents to Overwerx. Hill had no reason to anticipate any further claims from Ascent: the matter was resolved; the parties had no claims against each other; and Ascent said and did nothing to advise Hill that it was pursuing the development of a product which could compete with the PHOLOS in accordance with Hill's patents. Moreover, neither Overwatch Defense nor Ascent were under a noncompete agreement

10

and so both of them were free to develop whatever drone technology they wished, within whatever limits, if any, existed under the NDA and CTA as construed in light of applicable noncompete, antitrust, and trade secret laws. Michael Decl. ¶¶ 113-116.

## III.    APPLICABLE LEGAL STANDARDS

On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). When deciding a motion to dismiss for lack of personal jurisdiction, the Court may consider affidavits and other evidence submitted by the parties. *Ensign-Bickford Co. v. ICI Explosives USA Inc.*, 817 F. Supp. 1018, 1026 (D. Conn. 1993). "A prima facie case [of personal jurisdiction] requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 Fed. Appx. 16, 19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998)). This prima facie showing must include "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Importantly, a plaintiff may not rely on "conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Mazloum v. Int'l Com. Corp.*, 829 F. Supp. 2d 223, 227 (S.D.N.Y. 2011) (quoting *Jazini*, 148 at 185). The Court shall not "draw argumentative inferences in the plaintiff's favor," *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)), nor is the Court bound "to accept as true a legal conclusion couched as a factual allegation." *Jazini*, 148 F.3d at 185 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The same standard of review is applied to a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) as is applied to dismissals for lack of personal jurisdiction. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). In defending against a motion to dismiss for improper venue, plaintiffs bear the burden of proving that venue is proper. *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F. Supp. 2d 222, 237 (D. Conn. 2001). When deciding a motion to dismiss for improper venue, courts may consider materials outside the pleadings. *See, e.g., New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24, 26 (2d Cir. 1997). Pursuant to 28 U.S.C. § 1406(a), the Court may transfer or dismiss the case if venue is not proper. Should the defendant prevail on its motion, the Court still retains discretion to decline to dismiss the case in favor of a transfer to any district where the case could initially have been brought. *See id.* (citing *Minnette v. Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993)).

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court is tasked with testing "the adequacy of the complaint." *United States v. City of New York*, 359 F.3d 83, 88 (2d Cir. 2004). "A district court properly dismisses an action under . . . 12(b)(6) when the pleadings fail to 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). "Allegations are

12

deemed 'conclusory' where they recite only the elements of the claim." *Arar v. Ashcroft*, 585 F.3d 559, 617 (2d Cir. 2009). In sum, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570 (2007))

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction over any of the Defendants

The Complaint alleges that "each defendant personally and/or by and through an agent, (a) consented to jurisdiction in Connecticut, (b) transacted business within the state, (c) committed a tortious act within the state, and/or (d) committed wrongful acts outside the state" to the injury of Ascent "inside the state." Compl. ¶ 25. These allegations are refuted by the Hill and Michael Declarations.

#### 1.    The LLC Defendants are Not Subject to Personal Jurisdiction on Count One

Ascent alleges that Overwatch Defense breached the NDA even though it was not a party to that agreement. Ascent also alleges that Overwatch Defense breached the CTA and the so-called "settlement agreement."

Because Overwatch Defense was dissolved under Florida law, the state where it was organized as a limited liability company, Ascent also posits that Overwerx Ltd, Overwatch Aerospace Ltd, and Overwatch Aerospace LLC are "responsible for the debts and obligations of Overwatch Defense under federal and state principles of successor liability." Compl. ¶ 57. Not one of these arguments justify personal jurisdiction over Defendants in Connecticut.

##### a.    The NDA does not create personal jurisdiction as to Overwatch Defense

The NDA expressly defines the parties of the NDA to be Ascent at its Syracuse, NY address, and Overwatch Optics, LLC, a Florida LLC, the manager of which was Hill during the

life of the company. Overwatch Defense was never a party to the NDA and only became bound to certain terms of the NDA, if at all, through the CTA, which provided that the "Parties agree to be bound by the terms of the existing Non-Disclosure Agreement between the parties, dated 27 September 2017." CTA § H(1), ECF No. 8-5. The only parties who were signatories to the NDA were Ascent and Overwatch Optics, not Overwatch Defense.

Hill signed the NDA in his capacity as sole manager of Overwatch Optics and he received and transmitted information from and to Ascent in that capacity as well.  He did so from his location in Davenport, Florida, within the Middle District of Florida, where the NDA was performed. He also traveled to Syracuse, NY to meet with Fuchs where, now in his capacity as sole manager of Overwatch Defense, he also met the Meringer brothers who are the inventors on the Ascent patent and who signed a declaration in this case as founders of Ascent. Michael, a potential investor at the time, accompanied Hill to the Syracuse meeting, Michael Decl. ¶¶ 56-58, which occurred in or about October 16, 2018. All other exchanges of information between Hill and Ascent appear to have been email exchanges, telephone and video conference calls, and possibly express mail with Fuchs and his Ascent colleagues. Throughout the course of these information exchange, Hill was always acting as the manager of Overwatch Defense and, before the CTA was signed, Overwatch Optics, each of which was a Florida LLC. Hill also negotiated the CTA from Florida, primarily by various emails to and from Florida.

The CTA is between Overwatch Defense, LLC, a Florida LLC, and Ascent, which is listed in the Agreement itself as a *Delaware corporation* having its principal place of business in *Syracuse, New York*. CTA § A, ECF No. 8-5. The agreement recites that it was to establish a "teaming relationship by aligning resources . . . [for] Business Initiatives." *Id.* at § C. The CTA bears an effective date of November 12, 2017, and was expressly limited in its life to "2 years from

14

the date of this agreement . . . unless terminated earlier . . ." *Id.* at § D(1). Hence the maximum duration of the teaming relationship thus formed was November 12, 2019, unless sooner terminated. Like the NDA, the CTA is governed by New York law. *Id.* at § H(2). Although Section H(1) provides that the parties "agree to be bound by the terms of the existing Non-Disclosure Agreement *between the parties*, dated 27 September 2017" (emphasis added), it was not their intent to extend the scope of the existing NDA to include entities that were in fact not parties. As noted above, no contract development materialized after the CTA became effective and the Business Initiative referred to in the agreement never evolved into a product by the time Ascent terminated the CTA. Hill Decl. ¶ 40. Ascent itself pleads as a fact that on October 26, 2018, Overwatch Defense expressed an interest in "exploring a long-term exclusive license with Ascent" but that no such agreement was ever reached and in consequence Ascent itself "terminated the Commercial Teaming Agreement" by letter dated November 26, 2018. Compl. ¶¶ 41-42.

Ascent subsequently demanded the return of its "confidential, proprietary and/or trade secret information, *id.* ¶¶ 43-45, and it then sued Overwatch Defense in the first Connecticut case, but that complaint was never served on the Defendants as observed above. Hill Decl. ¶ 44; *see also* Michael Decl. ¶¶ 108-112. Ascent withdrew that lawsuit under Rule 41 voluntary dismissal without prejudice, Compl. ¶ 47, and now alleges that the Gowling Letter was a "Settlement Agreement," even though the complaint was never served, no lawyer appeared in the lawsuit on Overwatch Defense's behalf, Ascent voluntarily dismissed its complaint, and Overwatch Defense provided no meaningful consideration, only an affirmance of already existing commitments. Indeed, Hill disputes that it was a settlement agreement and the matter is best viewed as a promise to honor what the CTA incorporated terms of the NDA had already provided; nothing more. Thus,

the Gowling firm documentation stated that Overwatch Defense would comply with the following conditions:

I.      a return of Ascent's hardware and products as set out at Schedule "A";

II.     a verification under oath that all printed and electronic information, such term as defined in the mutual Non-Disclosure Agreement dated September 23, 2017 . . . , provided by Ascent or derived from Ascent's disclosures has been or will be destroyed as set out in Schedule "B";

III.    a promise that Overwatch [Defense] will not use any Information provided by Ascent or derived from Ascent's disclosures in any manner in the future as set out at Schedule "C"; and

IV.    an agreement that Overwatch Defense will not infringe U.S. Patent no. 10,093,417 82 as set out at Schedule "D".

Gowling Letter February 15, 2019, ECF No. 8-17. Hill signed a verification to that effect, certifying that "all printed and electronic Information" in the NDA "provided by Ascent or derived from Ascent's disclosures has been or will be destroyed." *Id.* at Schedule B. Hill also promised as Overwatch Defense CEO that "Overwatch will not use any Information provided by Ascent or derived from Ascent's disclosures in any manner in the future." *Id.* at Schedule C. The letter was signed by Overwatch Defense on or about February 15, 2019. This action commenced on June 21, 2024, more than five years after Overwatch Defense reaffirmed its prior commitments.

Count I of the present Complaint purports to sue Overwerx Ltd., Overwatch Aerospace Ltd., and/or Overwatch Aerospace LLC for breach of the NDA, the CTA, and the "Settlement Agreement." For purposes of determining whether jurisdiction is available over these entities, the first question is whether the NDA or CTA alone or in combination provide consent to jurisdiction by the now-dissolved Overwatch Defense that is in some way binding on the alleged successors to that company, Overwerx Ltd., Overwatch Aerospace Ltd. and Overwatch Aerospace, LLC, the Florida subsidiary.

16

To be sure, the NDA obligated Overwatch Optics to consent to the jurisdiction "of any State or Federal court located within or with jurisdiction over Sandy Hook, Connecticut." NDA § 12, ECF No. 8-6. But it is far from clear that in agreeing "to be bound by the terms of the existing Non-Disclosure Agreement" the parties to the CTA, Overwatch Defense and Ascent, intended to incorporate the portion of the NDA that provided for venue in Sandy Hook, Connecticut. Indeed, in view of the CTA's express inclusion of alternative dispute resolution procedures and a choice of law clause specifying New York law, the parties (Ascent and Overwatch Defense) did not incorporate the NDA's jurisdiction and venue clause, a seemingly conscious decision in light of the fact that it was so overtly included in the NDA. But whether incorporated or not, the forum selection clause is entirely permissive. It does not provide for exclusive jurisdiction in any one forum, and so it is not mandatory such that it should be viewed as binding. In the Second Circuit such permissive forum selection clauses are rarely enforced. *See John Boutari & Son, Wines and Spirits, S.A. v. Attiki*, 22 F.3d 51, 52–53 (2d Cir. 1994) (finding that forum selection clause is not enforceable in the absence of mandatory language as to exclusive jurisdiction); *Great N. Ins. Co. v. BMW of N. Am.*, LLC, No. 15-CV-00416 (VAB), 2018 WL 1472513, at *7 (D. Conn. Mar. 25, 2018) (forum selection clause containing permissive language not entitled to presumption of enforceability); *MAK Mktg., Inc. v. Kalapos*, 620 F. Supp. 2d 295, 303 (D. Conn. 2009) (permissive forum selection clause "provides no basis" for transfer to specified forum); *Evergreen Nat. Indem. Co. v. Capstone Bldg. Corp.*, No. CIV.A. 3-07-CV-1189J, 2008 WL 349457, at *3 (D. Conn. Feb. 6, 2008) (refusing to enforce permissive forum selection in light of ambiguous language; "had the parties intended to confer exclusive jurisdiction . . . they easily could have done so."). The Court is not restricted therefore in reaching its own informed conclusions about the most appropriate forum in which to litigate this dispute, given that none of the Defendants in this action

17

signed the CTA, and none of the Defendants have any connections to Connecticut. The rule to apply here is that stated by the Second Circuit in *Boutari*: "[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *John Boutari & Son, Wines and Spirits, S.A.*, 22 F.3d at 52 (noting general rule and citing many cases in other circuits). The Court should therefore hold the choice of forum in the CTA to be permissive, not mandatory.

> b.      Successor liability theories do not make allow for personal jurisdiction over the Defendants

Overwatch Defense stopped doing business. It had no duty to continue, and it had no money to fund its further research. Hill Decl. ¶ 40.; Michael Decl. ¶¶ 116; 127-130. Hill agreed to work with his only potential funding source, Michael, and investors in the UK and so he transferred his patents, then owned by Overwatch Defense, to Overwerx, in exchange for stock in that company, hoping that he would in time turn that stock into value if his commercial version of his patents ever made it into the market. The details of the transactions are set forth in detail in the Michael Declaration ¶¶ 130-142.

Ascent attempts to base its breach of contract claims on one or more exceptions to the general rule that would otherwise preclude holding Overwerx (the transferee) from being liable for the debts of Overwatch Defense (the transferor) following a transaction in which the Patent Assets of Overwatch Defense were purchased by Overwerx. To prevail on this far-fetched theory Ascent must establish that (a) Overwerx is a mere continuation of Overwatch Defense; or (b) that there is a *de facto* merger/*de facto* consolidation of Overwatch Defense and Overwerx; or (c) the transfer of the patent assets was designed to affect a fraud. But Ascent has not pleaded a plausible basis for inferring successor liability theory under any of these applicable standards, under

18

Connecticut or Florida law, and the Hill and Michael Declarations make clear that they cannot do so.

First, the facts of the case, as shown by the Hill and Michael declarations, do not fit the "continuity of enterprise" standard. A continuation of a business under Connecticut law exists "if the successor maintains the same business, with the same employees doing the same jobs, under the same supervisors, working conditions, and production processes, and produces the same products for the same customers." *Chamlink Corp. v. Merritt Extruder Corp.*, 96 Conn. App. 183, 188 (2006). The court must "look to substance rather than form." *See Medina v. Unlimited Sys., LLC*, 760 F. Supp. 2d 263, 270-71 (D. Conn. 2010); *S. Connecticut Gas Co. v. Waterview of Bridgeport Ass'n., Inc.*, No. CV054005335, 2006 WL 1681005, at *2 (Conn. Super. Ct. June 1, 2006); *Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 2 F. Supp. 3d 192, 218 (D. Conn. 2014), *aff'd sub nom.*, *Call Ctr. Techs., Inc. v. Interline Travel & Tour, Inc.*, 622 F. App'x 73 (2d Cir. 2015). The failure to show the "same employees were doing the same job, under the same supervisors, working conditions, and production processes, and producing the same products for the same customers" is fatal to a plaintiff's claim under this theory. *Lawnranger, LLC v. Stabnick*, No. CV116019457S, 2015 WL 7709142, at *8 (Conn. Super. Ct. Oct. 29, 2015).

Here Overwatch Defense had no employees and only a single owner and no customers. It was a patent start up, depending upon potential investors like Michael to succeed in anything. When Hill transferred his patents, he put his prospects in the control of Michael and his UK investors and a whole team of engineers and consultants willing to take Hill's ideas and translate them into a genuine commercially successful PHOLOS. What Overwatch Aerospace Ltd. accomplished in this respect required capital, engineers, and consultants, which Overwatch Defense simply did not have. The business of Overwatch Aerospace Ltd. was not a mere

19

continuation of the business but an example of an inventor making the necessary and prudent decision to place his patent in the hands of the managers and engineers necessary to get his vision of the final product realized in the marketplace, *i.e.*, an exchange of control and ownership in return for stock in the acquiring company and a chance for some measure of success.

For essentially the same reasons, the "mere continuation" theory also fails. Under this test, "successor liability attaches when the plaintiff demonstrates the existence of a single corporation after the transfer of assets, with an identity of stock, stockholders, and directors between the successor and predecessor corporations." *Chamlink Corp.*, 96 Conn. App. at 188; *see also A.G. Assocs. of Newington Britain v. Parafati*, No. CVN0041808N, 2002 WL 1162890, at *3 (Conn. Super. Ct. Apr. 11, 2002) ("[a] successor corporation is not liable for the debts and liabilities of its predecessor unless the purchaser is a mere continuation of the Seller.")  Here there was no single corporation, but two UK companies and one Florida subsidiary for potential business in the United States. There was no identity of stock or stockholders and directors. Rather Hill received some shares in Overwerx which he gradually liquidated as his health failed. Michael Decl. ¶¶ 130-142, 145-146. There are many other shareholders and managers and engineers in the UK, and so there is no commonality of stock, shareholders or directors, even though Hill provides limited consultancy services remotely from Florida to Overwatch Aerospace Ltd., as required to support the Florida focused effort to successfully achieve a patent award. Michael Decl. ¶¶ 131-132. None of the criteria for the "mere continuation" theory are present.

Finally, the *de facto* merger theory is also unavailing to Ascent. Under Connecticut law, the *de facto* merger and the *de facto* consolidation exceptions are considered one and the same. A de facto merger – consolidation exception occurs when one corporation is **absorbed by another without complying with the necessary formalities**. *See* 19 C.J.S. Corporations § 880; *see also*

*Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc.*, 638 F. Supp. 2d 278, 289 (D. Conn. 2009) (noting that "*de facto* merger occurs when a transaction, although not in form a merger, is in substance 'a consolidation or merger of seller and purchaser.'").

Here, there was no absorption of Overwatch Defense by Overwerx or Overwatch Aerospace Ltd. Hill merely procured the transfer of his patents from Overwatch Defense, which were free and clear assets, with no claim against them from any creditor, including Ascent, and then permitted the UK companies to use the name "Overwatch" for their operations, while he worked for a short time as a consultant and shareholder hoping to see his invention materialize into viable development, production and sales. As noted above, other shareholders and investors were a critical part of the UK companies and it was because of their capital that the companies in the UK succeeded, using the engineering team and consultants that Overwatch Defense lacked the resources and even expertise to secure. The ordinary business of Overwatch Defense, being a start-up business, was primarily to hold title to the Patent Rights relating to the PHOLOS. Except for entering into the CTA with Ascent and holding title in the Patent Rights, Overwatch Defense was inactive from its inception. It did not have any customers or revenues, but remained in good standing from before the date of the transaction. None of Overwerx, Overwatch Aerospace Ltd. or Overwatch Aerospace LLC assumed any liabilities of Overwatch Defense for the uninterrupted continuation of Overwatch Defense's operations. The necessary factors for applying this exception are lacking.

Equally inapplicable to this case is any plausible allegation of fraud *vis-a-vis* Ascent, creditors, or anyone else. In determining whether successor liability applies based on fraud, courts applying Connecticut law rely on Connecticut General Statutes § 52-552e, which provides two theories that are available to a creditor to prove fraudulent transfer. First, a creditor may prove that

21

the transfer was made with actual intent to defraud. *See* Conn. Gen. Stat. § 52-552e(a)(1). Second, a creditor may prove that the debtor did not receive "a reasonably equivalent value in exchange for the transfer." S*ee* Conn. Gen. Stat. § 52-552e(a)(2). Here no assets transferred save for the patents and no liabilities save for ordinary fees due for patent work. Michael,¶¶ 136-140. This was an ordinary commercial acquisition of an inventor's patents in exchange for his share in the purchasing holding company and a chance to be paid to assist in the work.

This Court should therefore reject Ascent's claims that the NDA and CTA - whether bootstrapped with successor liability theories or not – establish personal jurisdiction over the Defendants.

c.      Conn. Gen. Stat. § 33-929 does not apply

Because all three entities – Overwerx Ltd, Overwatch Aerospace Ltd, and Overwatch Aerospace LLC, a Florida subsidiary of Overwatch Aerospace Ltd – are limited liability companies, not corporations, Conn. Gen. Stat. § 33-929, which is limited to actions against foreign ***corporations***, is not available to Ascent. *See, e.g.*, *Matthew v. SBA, Inc.*, 149 Conn. App. 513, 545 (2014) (emphasis added) ("[W]e hold that our general long arm jurisdiction provision, § 52-59b, rather than our corporation specific long arm provision, § 33-929, applies to foreign LLCs.").

d.      Conn. Gen. Stat. § 52-59b does not justify long-arm jurisdiction

Conn. Gen. Stat. § 52-59b is available over a foreign partnership which "transacts any business within the state" if it "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." The statute will permit the exercise of personal jurisdiction over a foreign LLC if it has "engaged in some form of affirmative conduct allowing or promoting the transaction of business within the forum

22

state." *Chirag v. Mi Marida Marguerite Schiffarhrts*, 933 F. Supp. 2d 349, 352 (D. Conn. 2013); *Verture Inc. v. Meshki*, 429 F. Supp. 2d 479, 490 (D. Conn 2006) (noting several factors relevant to whether an out-of-state defendant has "transacted business" in Connecticut).

Here such promotion of business in the forum would have been impossible for all three companies. First, none of them existed at any point relevant to the alleged contract breach. The initial NDA was executed for Overwatch Optics on September 27, 2017; the CTA was executed for Overwatch Defense on November 12, 2017; and the UK entities were not incorporated in the UK until January 14, 2020 in the case of Overwerx Ltd, February 7, 2020 in the case of Overwatch Aerospace Ltd, and August 19, 2021 in the case of Overwatch Aerospace, LLC, as confirmed in the Florida Secretary of State records. Overwatch Defense was dissolved on September 25, 2020, when it failed to file an annual report and had already become moribund. Hill Decl. Ex. 18.

Second, none of the liabilities of Overwatch Defense were assumed by the UK companies and, moreover, none were known to exist. Michael Decl. ¶ 146.  And as for the dismissal of the initial Connecticut lawsuit and the accompanying "settlement agreement" made "without prejudice," there were no long-term promises of future affirmative performance as to Ascent or even an acquiescence to the NDA by Overwatch Defense. Instead for reasons noted to be "Without Prejudice" by the Canadian attorneys, Overwatch Defense stated it would not use confidential information provided by Ascent or derived from it and would destroy confidential electronic and printed information. Overwatch Defense not only observed these commitments, but it ceased to engage in any active business. Hill Decl. Ex. 18. The claim that the non-existent settlement in some way obligated the UK-related companies to honor the NDA to which they are not parties is simply fanciful.

Finally, and most importantly, none of the three companies has any present business operations in the United States, let alone in Connecticut. There have been no contacts with Connecticut as the forum by any of the UK entities. So no basis for personal jurisdiction over any of these companies in Connecticut exists. Ascent's Complaint effectively concedes this point for it makes a nearly desperate conclusory statement in Paragraph 57 that there was a "de facto merger/consolidation," or the UK companies were "a mere continuation of Overwatch Defense[.]" How exactly? The Complaint supplies not a shred of fact to support this claim and that is because there are none, as the Hill and Michael Declarations show.

As to the claims in Count I of the Ascent Complaint, therefore, there is no basis for invoking the general jurisdiction statute to justify long-arm jurisdiction over the LLC Defendants.

2.    Long Arm Jurisdiction does not Extend to Hill or Michael on Count Two

Ascent alleges that Hill and Michael are amenable to suit in Connecticut on the claim in Count I "under equitable principles of veil piercing." Compl. ¶ 63. This claim is utterly lacking in merit.

Hill is an individual who managed and owned Overwatch Defense but never once set foot in Connecticut as an individual. Hill Decl. ¶ 21. Hill was never personally a party to the NDA or the CTA or even the so-called "Settlement Agreement." All such documents were concluded by Hill only in his capacity as the Manager/CEO of either Overwatch Optics (in the case of the NDA) or Overwatch Defense (in the case of the CTA and the so-called Settlement Agreement). This is likewise the case for Michael, who owned no interest in and was not a manager of Overwatch Defense or, for that matter, Overwatch Optics. He signed nothing individually and likewise never once entered into Connecticut, let alone did business there as an individual. Michael was also not a person who controlled or dominated the affairs of Overwatch Defense or Overwatch Optics; he was at best a potential financing source and potential partner of Hill, given an honorary job title

24

for marketing purposes. Hill Decl. ¶ 56; Michael Decl. ¶ 25. But even if one were to assume that he was "dominant" in the company, which is not supported by the evidence, there is still no theory by which he could he be reached for service of process in Connecticut.  No case law in state or federal court appears to support this argument for jurisdiction. Where alter ego is the theory advanced for jurisdiction, it is ordinarily based on the supposition that the defendant owns all of the stock of the corporate entity which entity is under the control of that defendant such that it is a mere shell "used primarily as an intermediary to perpetuate fraud or promote injustice." *Legal A/S v. Best-Lock Const. Toys Inc.*, 886 F. Supp. 2d 65, 78-79 (D. Conn. 2012), following *Napes v. Keystone Bldg. & Dec. Corp.*, 295 Conn. 214, 231 (2010).  Here Ascent does not allege ownership by Michael and the facts (legal conclusions) asserted by Ascent in the Complaint (*e.g.* ECF No. 1, ¶ 63) have all been refuted by the defense declarations and supporting exhibits. As in the *Best-Lock case,* what is lacking in this case is a "specific averment of facts" that has not been rebutted by the defense declarations. Id., at 886 F. Supp. 2d 80. Without the specific facts, the "allegations and conjectures are entirely insufficient to plead a prima facie justification for piercing the corporate veil in this case" *Id.* The Court should accordingly find that Ascent failed to plead or establish that Hill and Michael are amenable to personal jurisdiction under the Conn. Gen. Stat. § 52-59b (a)(1) on Count II.

> 3.    No Defendant Committed a Tortious Act within the State Within the Meaning of § 52-59b(a)(2) or a Tort Outside the State with Injury to Persons Within the State

Counts Three, Four and Five purport to allege tort type claims (misappropriation of trade secrets, correction of misstated inventors and deceptive trade practices.  In order for Long Arm jurisdiction to exist on these claims under Gen Stat. § 52-59b (a) (2) or (3) it is necessary to consider whether jurisdiction over Defendants can be predicated on the commission of a "tortious act within the state" or, alternatively, for a "tortious act outside the state causing injury to persons

or property *within* the state" (emphasis added). Considering, initially, the claim of trade secret misappropriation asserted in Count III, Ascent alleges only that it had trade secrets and that it provided certain aspects of its secrets "under the NDA and Teaming Agreement". Doc 1, ¶ 39. The secrets are claimed also to be imbedded in some way in the "equipment and items" delivered to Overwatch Defense. Id., at ¶ 40. Overwatch Defense later "agreed to return all of Ascent's equipment except for one drone that was allegedly destroyed" and promised to otherwise return or not use what had been provided and also not to infringe the Ascent patent. *Id.* In Count III Ascent alleges that Defendants "misappropriated Ascent's trade secret protected information by using the trade secrets . . . after Hill, Michael and Overwatch Defense derived and secured the information and equipment under the circumstances that explicitly limited their use." Id, ¶ 75. No further particularity is provided in the Complaint as to the situs of the alleged misappropriation. Connecticut, however, applies a "site of injury" test, under which the court determines the event that caused the plaintiff's injury. "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiffs." *Godiksen v. Meadow View Farms, LLC*, 2024 WL 807051 at *4 (Superior Ct. Conn Feb. 16, 2024). The best candidates for the situs of the alleged misappropriation are either Florida, where Overwatch Defense had its offices and where Hill worked and lived, or New York, where the Syracuse office was located and where Ascent personnel met on one sole occasion with Hill and Michael and were provided some of the supposedly confidential information. *See* Hill Decl. ¶ 16; Michael,¶¶ 56-58. Connecticut is not mentioned as the situs and is not even where Ascent had its principal place of business. *See* Compl. ¶ 2. Even if an actionable wrong was committed, it was not in Connecticut. Hence jurisdiction is not available over Defendants under § 59-52 b (a)(2*). See, e.g.*, *Connecticut Aircraft Corp. v. Smith*, 574 F. Supp. 626, 629 (D. Conn. 1983) (in a trade secret

26

case locus delicti was Florida where supposed secrets were disclosed by former employee to defendant).

Whether § 52-59b (a)(3) can be invoked to justify personal jurisdiction in Connecticut turns upon the question whether direct economic injury to the plaintiff was sustained in Connecticut. *Id.* (citing many cases). Such injury has not occurred where (a) the individual Defendants were not even present in the state, where none of the Defendants solicited or engaged in business, where there was no persistent course of conduct of or substantial revenue derived and where no goods or services were consumed. *Ferrar v Munro*, 585 B.R. 269 (D. Conn. 2018). As the declarations submitted herewith show, Hill and Michael as individuals never entered Connecticut. Nor do either Hill or Michael do business with any of the Ascent personnel here. While the CTA purports to incorporate certain terms of the NDA, this incorporation could only have included the confidentiality undertakings contained in the NDA and was not intended to incorporate any legal boilerplate clauses such as venue. Overwatch Defense was subsequently dissolved after it ceased operations, and its patents were transferred to the UK company, Overwerx, as part of an effort to commercialize the Hill inventions. None of the Defendants were parties to the CTA or the NDA and none of the present foreign companies even existed during the alleged misappropriation. Indeed, they did no business in Connecticut, solicited no business from Ascent or anyone else in Connecticut and have derived no revenue from intrastate business within Connecticut. The necessary predicate for exercising personal jurisdiction over Defendants under § 52-59b(a)(3) simply does not exist. The court should therefore find that no jurisdiction over Defendants is available on the claim of trade secret misappropriation, wherever that tort is assumed to have taken place.

27

The same conclusion is necessary as to the claim for Deceptive Trade Practices under § 42-110a. Under § 52-59b (a)(3), for which the threshold question is the same as addressed above: did Ascent suffer direct economic injury within Connecticut as the consequence of the alleged violations of the statute. *Bloom v Bloom Family Limited Partnership*, No. FBTCV196084463S, 2020 WL 854027 at * 4-5 (D. Conn. Jan. 17, 2020); *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 494 (D. Conn 2006); *Connecticut Artcraft Corp v. Smith*, 574 F. Supp. 626, 630 (D. Conn. 1983). As noted by the court in *Bloom: ". . . in Connecticut Artcraft Corp.*, the court found that no injury was sustained in Connecticut because, even though the defendant allegedly stole trade secrets from the Connecticut plaintiff, it did not sell any of its products in Connecticut or steal any of the plaintiff's customers in Connecticut. . . . By contrast, the court in *Vertrue, Inc.* found that injury was sustained in Connecticut because misrepresentations were made in Connecticut and the Connecticut-based plaintiff sustained the loss of an advance that was paid in Connecticut." Bloom, at *4. In *Bloom,* on the other hand, the injury to plaintiff was entirely attenuated, depending on an impact on subsidiaries who supposedly lost money in Connecticut Moreover, what was lacking in *Bloom* was proof that the defendants regularly solicited business or engaged in a persistent course of conduct, or services rendered in Connecticut. *Bloom*, 2020 WL 854027 at *5.

This case is much closer to *Bloom* and *Connecticut Artcraf*: Ascent is not a Connecticut based company and it has suffered no injury in Connecticut. Moreover, none of the Defendants are alleged to have met with Ascent in Connecticut or to have made affirmative misrepresentations in Connecticut. Hill and Michael were never in the state at all and made no representations in Connecticut. Even the so-called settlement agreement was made by Canadian lawyers in connection with a lawsuit that was never served upon Overwatch Defense, and Hill and Michael were never named as parties. No evidence exists that any of the Defendants made fraudulent

28

representations to a Connecticut resident, an important factor in *Vertrue. Vertrue,* 429 F. Supp. 2d at 492-493. Count V makes a number of conclusory statements about unfair trade practices, but none of the listed items at Paragraph 89 involve representations inflicting injury to Ascent that was in some sense suffered in Connecticut, if suffered at all, and none involved acts of solicitations of business from consumers in Connecticut or solicitations or conduct whereby a defendant derives substantial revenue from goods or services consumed in Connecticut.

4.      No Defendant Waived Venue or Consented to Jurisdiction Here

Ascent alleges that Defendants consented to jurisdiction in Connecticut. No facts support this assertion. The sole only reference relied upon by Ascent is found in the NDA, but that provision, as already noted, is not binding on these parties and, in any event, is permissive in nature and therefore its application should be refused where, as here, there are no other connections to Connecticut.

The whole theory of consent to jurisdiction pleaded by Ascent is without foundation in law or fact. Ascent has failed to articulate any basis under any claim, in contract or tort, under which any of the Defendants is amenable to sue in Connecticut. Due process would be offended if the court assumed jurisdiction over these Defendants. If Ascent wishes to sue Defendants, it may attempt to do so in Florida, where at least Overwatch Aerospace LLC is located, or in the UK where Michael, Overwerx Ltd. and Overwatch Aerospace Ltd. are located.

B.      Venue Does Not Lie in Connecticut

"A civil action may be brought in the judicial district in which any defendant resides or is subject to the court's personal jurisdiction, or in the judicial district in which a substantial part of the events giving rise to the action occurred." *Success*, 439 F. Supp. 3d 31, 56. The district of Connecticut is clearly an improper venue for this action on all grounds, as would be all districts save the Middle District of Florida, where at least Overwatch Aerospace, LLC, effectively only an

29

inactive subsidiary of the UK entity, Overwatch Aerospace, Ltd., exists. The case should therefore be dismissed as to all Defendants or, alternatively transferred to the Middle District of Florida as to the one defendant located there.

        C.        Alternatively, Counts Two, Three and Four of Ascent's Complaint Must Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6)

            1.        Count Two for breach of contract must be dismissed

In Count Two Ascent seeks to impose liability on Hill and Michael for the alleged breach by Overwatch Defense of its obligations, if any, under the NDA, the CTA, and the so-called Settlement Agreement. The alter-ego theory upon which this claim is asserted is stated in Paragraph 63, which is full of conclusory accusations rather than statements of fact. What is alleged is plainly insufficient as to both Michael and Hill.

Under Connecticut law, any liability predicated upon piercing the veil of a foreign LLC, must be determined by applying the law of the state of the foreign LLC's incorporation, which in this case is the law of Florida. *See, e.g., Universitas Education, LLC v. Benistar*, No. 3:20-cv-00738 (JAM), 2021 WL 965794, at *7 (D. Conn. March 15, 2021) (citing *Weber v U.S. Sterling Sec, Inc.,* 282 Conn. 722, 730 (2007)). To pierce the veil the plaintiff must allege facts showing: (a) the defendant is an owner/shareholder who "dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation;" (b) the corporate form, here an LLC, was used by the defendants "fraudulently or for an improper purpose," and (c) the claimant was injured. *Supreme Fuels Trading FZE v Sargeant*,  No. 23-80633-CIV-Altonaga/Maynard, 2023 WL 6121909, at * 5 (S.D. Fla. Sept. 19, 2023) (quoting *Molinos Valle Del Ciabo, C. por v Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) ("Florida law. . . does not permit a plaintiff to pierce veil against a non-shareholder director.").

30

Ascent pleads no facts to establish that Michael was a shareholder or a director/manager of Overwatch Defense. Ascent identifies him only as the "Chief Operating Officer" of Overwatch Defense, not as a member or manager of the LLC. Compl. ¶ 14. Because this is a necessary element of the theory under Florida law, this claim is legally insufficient as a matter of law to Michael because Michael was not a member or manager. *Molinos,* 633 F.3d at 1349. Ascent's other allegations about Michael are based on mere conclusions.

Hill certainly was an officer and manager of the company, but ownership alone is not sufficient, particularly for an LLC, which is by its nature intended to limit liability for small businesspersons. So, this leads us to the fraud element: A legally sufficient complaint would plead facts to show that the LLC form was used by Hill "fraudulently or for an improper purpose." *Molinos*, 633 F.3d at 1349-50; *Buser v. Experian Information Solutions, Inc.*, No. 8:23-cv-1881-TPB-UAM, 2023 WL 8828794, at * 3 (M.D. Fla. Dec. 21, 2023). Paragraph 63 does not plead facts to show that Hill, alone or in combination with Michael, a non-shareholder, worked any fraud on creditors or used the corporate form "for some illegal, fraudulent, or other unjust purpose, which justifies piercing the corporate veil." *Dania Jai-Alai Palace, Inc, v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984); Buser, 2023 WL 8828794, at * 3. Mere closely held ownership is insufficient. *Id.* Nor is a breach of contract by the entity sufficient to pierce a corporate veil. *See, e.g., Pearce v. State Farm Mutual Auto Ins. Co*., No. 22-cv-14353-Middlebrooks/Maynard, 2023 WL 9060869, at *3 (M.D. Fla. July 13, 2023).  A viable veil piercing claim would set forth the underlying facts, which facts must "nudge" the supposed fraud and improper dominion and control to the disadvantage of creditors across the line "from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (citing *Twombly,* 550 U.S. at 570). The necessary detail was, for example, present in Supreme Fuels Trading, but it is utterly lacking here. *See Supreme Fuels Trading FZE*, 2023 WL 6121909, at * 5. Ascent has

31

served up a set of conclusory accusations only. Due process demands more as the plaintiff must plead a plausible basis for inferring the corporate form was used improperly to defraud or mislead Ascent or creditors generally, and to Ascent's injury.

        2.      Count Three for misappropriation of trade secrets must be dismissed

Count Three accuses all Defendants of misappropriating trade secrets "after Hill, Michael and Overwatch Defense derived and secured the information and equipment under circumstances that explicitly limited their use, including without limitation that Ascent's coaxial drones would not be reverse engineered, disassembled, decompiled or otherwise analyzed." Compl. ¶ 75.  Note that this allegation does not allege a particular use, in Connecticut or elsewhere, or a particular disclosure, of any particularly identified discrete trade secrets. It alleges only in a generic sense that Defendants "have misappropriated . . . trade secret protected information by using the trade secrets without Ascent's consent[.]" *Id.* (emphasis added). This is insufficient. A trade secret claimant must plausibly allege that there was a particular trade secret subject to reasonable measures to protect that secret and that it was used or acquired or disclosed improperly by the defendant. *Pauwels v Deloitte, LLC*, 83 F.4th 171, 181 (2d Cir. 2023); *see also Compulife Software Inc v. Newman*, 959 F. 3d 1288, 1311-1314 (11th Cir. 2020). The plaintiff must also allege the secret with some level of specificity and it must also identify the particular wrongdoers with the secret in view.

A trade secret is "not defined with sufficient particularity where the description of the secret, or the mechanisms and relationships comprising the secret, is vague, indefinite, and/or ambiguous[.]" *Roller Bearing Company of America, Inc. v. Multicut North America, Inc.*, No. 3:18-cv-1212 (SRU), 2023 WL 7277244, at *16 (D. Conn. Sept. 29, 2023). What is lacking in Ascent's Complaint is any detail to make it plausible that one or more defendants (a) did use or disclose any concretely defined secret or (b) that the defendant engaged in actionable reverse

engineering whereby an alleged secret was harvested in a manner prohibited by the NDA or the CTA. Instead, Ascent ambiguously alleges there was "reverse engineering" of Ascent "equipment." This may or may not be a violation of the NDA or the CTA, but the allegation is not plausible without more detail that the reverse engineering, if any, was actionable based on use or disclosure *of a trade secret.*

Reverse engineering is on its face an affirmative defense under 18 U.S.C. § 1839(6)(B). The resort to reverse engineering, if proven, may not be a violation of the CTA or NDA , which Ascent did not bother to attach to the Complaint, but it is not a violation of the DTSA, actionable under 18 U.S.C.§ 1832. Moreover, reverse engineering from "equipment" sold by another manufacturer is not protected if accomplished by "working backward to divine the process" or other such lawful means. *Faiverly Transport Malmo AB v. Wabtec Corp.*, 559 F. 3d 110, 117 (2d Cir. 2009) (citing *Kewanee Oil Co. v Bicron Corp.*, 416 U.S 470, 476 (1974). Yet Ascent does not allege facts to connect the NDA or the CTA to the alleged reverse engineering; it also indiscriminately alleges that all of the Defendants are liable, even those that were not in existence at the time Ascent withdrew from the CTA. Hence more detail is necessary to render plausible the asserted claim, such as where, when, by whom the alleged reverse engineering of "equipment" was done, and why that equipment was not in the public domain at the time. Moreover, the claim under the DTSA should be severed from the reverse engineering claim, which is at best a contract claim, to the extent the same is not preempted by the Patent Act. *See., e.g., Bonito Boats, Inc v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 163-167 (1989) (holding that states are not free to accord patent-like rights to protect non-patentable designs from reverse engineering).

### 3. Count Four for correction of inventorship must be dismissed

In Count Four Ascent requests an inventorship correction pursuant to 35 U.S.C. § 256. Ascent alleges that two of its founders "conceived of and reduced to practice" the invention(s) of

33

the two Hill patents "before Hill, and Hill wrongly misappropriated it and then fraudulently claimed it as his own." Compl. ¶ 83. The alleged prior inventors are not named as parties, however, and Ascent lacks standing to sue on its own as an alleged co-owner, for it has failed to plead facts showing it has an ownership interest in the Hill patents. *See, e.g., Chou v. Univ. Of Chicago*, 254 F.3d 1347, 1359 (Fed. Cir. 2001) ("The validity of a patent requires that the inventors be correctly named."). The omitted inventors must be named as party plaintiffs, even if one were to assume the Court has jurisdiction over Defendants, which it does not. The Court consequently lacks subject matter jurisdiction over the matter of this claim. *See e.g.*, *Eastwood v. Molecular Defenses Corp.*, 373 F. Supp. 3d 502, 507-08 (S.D.N.Y 2019) (dismissing case where plaintiff did not have standing to bring inventorship claims). Aside from this glaring defect, Ascent has also failed to plead any facts to corroborate the claim for the missing co-inventors. But an uncorroborated assertion of prior invention, or co-invention, by omitted co-inventors must plead facts making the claim plausible factually, including facts sufficient to identify the details of prior invention and the facts corroborating them. An alleged co-inventor must supply "evidence to corroborate his testimony." *Blue Gentian, LLC v. Tristar Products, Inc.*, 70 F.4th 1351, 1357 (Fed. Cir. 2023). Accordingly, a complaint for correction of inventorship must also be supported by sufficient allegations making it plausible to infer that Ascent's founders were prior inventors or co-inventors. The complaint also improperly asserts both that two of the Ascent founders were omitted co-inventors and that they were prior inventors, and that hill claimed ownership of their invention for himself. *See* Compl. ¶ 85. These are distinctly different and perhaps even inconsistent claims, each lumped together into one claim, lacking a plausible factual basis for each.

## V.    CONCLUSION

The Court should dismiss the Complaint under Rule 12(b)(2) for lack of personal jurisdiction or, in the alternative, for improper venue, or, as appropriate transfer venue to the

United States District Court for the Middle District of Florida as to the Overwatch Aerospace, Ltd.

In the alternative, the Court should dismiss the Complaint under Rule 12(b)(6) as to Counts II, III

and IV.


Dated:  August 26, 2024                          RESPECTFULLY SUBMITTED,

                                                 DEFENDANTS JEFFREY T. HILL,
                                                 ANDREW G. MICHAEL, OVERWATCH
                                                 AEROSPACE LLC, OVERWATCH
                                                 AEROSPACE LTD, OVERWERX LTD

                                                  /s/ Thomas J. Rechen
                                                  Thomas J. Rechen, Esq.
                                                  **McCarter & English, LLP**
                                                  City Place 1, 36th Floor
                                                  185 Asylum Street, 36th Floor
                                                  Hartford, CT 06103
                                                  Tel: (860) 275-6706
                                                  Fax: (860) 218-9680
                                                  trechen@mccarter.com

                                                  Ferdinand Romano, Esq. (*Pro Hac Vice*)
                                                  **Accel IP Law, PLLC**
                                                  505 Brevard Ave., Suite 104
                                                  Cocoa, FL 32922
                                                  Tel: (321) 223-6215
                                                  Fax: (321) 417-7126
                                                  fromano@acceliplaw.com

                                                  Stephen Milbrath, Esq. (*Pro Hac Vice*)
                                                  **Bitman O'Brien & Morat, PLLC**
                                                  610 Crescent Executive Ct., Suite 112
                                                  Lake Mary, Florida 32746
                                                  Tel: (407) 815.3110
                                                  smilbrath@bitman-law.com

35

## CERTIFICATE OF SERVICE

I hereby certify that on August 26. 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Thomas J. Rechen*
Thomas J. Rechen